## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| DIVERSITECH CORPORATION, *et ano*,<br><br>                     Plaintiffs,<br><br>        -against-<br><br>EVOLVE COMPOSITES, INC.,<br><br>                    Defendant. | Civil Action 11-cv-00568-JEC |

**EVOLVE COMPOSITES, INC.'S RESPONSE TO PLAINTIFFS'
OBJECTIONS TO THE REPORT AND RECOMMENDATION OF
<u>SPECIAL MASTER REGARDING CLAIM CONSTRUCTION</u>**

ABELMAN, FRAYNE & SCHWAB
666 Third Avenue
New York, New York 10017

and

HUNTON & WILLIAMS LLP
Bank of America Plaza, Suite 4100
600 Peachtree Street, NE
Atlanta, Georgia  30308

*Attorneys for Defendant Evolve
Composites, Inc.*

August 17, 2012

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. i

PRELIMINARY STATEMENT ........................................................................1

BACKGROUND FACTS ...................................................................................3

ARGUMENT .......................................................................................................8

I.   THE SPECIAL MASTER'S REPORT AND RECOMMENDATION
SHOULD BE ADOPTED IN ITS ENTIRETY BY THE COURT..........................8

   A.   The Special Master Properly Construed the Term "Base Opening."............... 8

   B.   The Special Master Properly Struck Portions of DiversiTech's
Supplemental Response................................................................................ 13

     1.   The Special Master did not abuse his discretion in striking
portions of DiversiTech's supplemental response. ........................................ 13

     2.   DiversiTech's supplemental response concerning "riser portions"
is mistaken in any event. .............................................................................. 15

CONCLUSION .................................................................................................20

# TABLE OF AUTHORITIES

**Page**

*Gulf States Reorganization Group, Inc. v. Nucor Corp.*,
    822 F. Supp.2d 1201 (N.D. Ala. 2011)........................................................................ 13

*Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313 (Fed. Cir. 2005)........................................... 12

*Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372 (Fed. Cir. 2008) ........................................ 15

*Wavetronix v. EIS Electronic Integrated Sys.*, 573 F.3d 1343 (Fed. Cir. 2009) ........................... 15

Defendant Evolve Composites, Inc. ("Evolve") respectfully submits Evolve Composites, Inc.'s Response to Plaintiffs' Objections to the Report and Recommendation of Special Master Regarding Claim Construction construing the pertinent claims in the patent-in-suit, U.S. Patent No. 7,891,635 to Rowland ("'635 Patent").

## PRELIMINARY STATEMENT

The '635 Patent, entitled "Equipment Pad with Integrated Riser," claims a pad for elevating equipment, such as an air conditioning condenser unit.   As characterized by Plaintiffs,

> **The spirit and scope of this patent is that we have a pad with multiple riser portions as opposed to individual risers, and that areas underneath the riser portions are open so the pad is stackable.**

(*See* Excerpts from June 28, 2012 Claim Construction Hearing attached to the Declaration of Richard L. Crisona ("Crisona Decl.") as Exhibit A 11:16-20 (emphasis added))  Of the seven terms originally proposed for construction by the parties, the only remaining dispute concerns Plaintiffs' objection to the Special Master's construction of the term for the "open" "areas underneath the riser portions," which in the '635 Patent claims are called "base openings."  Plaintiffs, through convoluted reasoning in which they insist that the Special Master should have "start[ed] his analysis on the top of the equipment pad" to determine how the

term for an opening in the *bottom* of the equipment pad should be construed, contend that the term "base opening" should be construed as "an opening through the base aligned with the sidewalls of a riser portion." (Plaintiffs' Objections to the Report and Recommendation of Special Master Regarding Claim Construction ("Objection") at 2)

The Special Master, by contrast, bases his far more straightforward analysis on the observations, which are *not* disputed by Plaintiffs, that claim 1 in the '635 Patent requires a *plurality* of base openings (meaning that any infringing device must have more than one base opening) and that any construction of the term "base opening" must allow the trier of fact to distinguish a single base opening from multiple base openings. (Report and Recommendation of Special Master Regarding Claim Construction ("Report") at 20) Concluding that Plaintiffs' (and Evolve's) proposed constructions did not meet this criterion, the Special Master recommends that the term "base opening" be construed as "a hole in the base whose lateral boundary consists of the entirety of the interior edge of the base exposed by the hole." (*Id.* at 24)

Evolve respectfully submits that the Special Master's construction of the term "base opening," while not phrased as Evolve proposed, nevertheless captures the essential features that any proper construction of the term must include.

Plaintiffs' proposed construction, as pointed out by the Special Master, does not.[1]
(*Id.* at 23)  The Special Master's Report and Recommendation should be adopted
by the Court in its entirety.

## BACKGROUND FACTS

The parties completed their claim construction briefing on March 16, 2012.
In their briefing, the parties submitted seven terms to be construed, and agreed on
the construction of two of those terms ("plurality" and "riser portion"), leaving five
disputed terms – (i) "a base surface that extends laterally," (ii) "base openings,"
(iii) "substantially hollow," (iv) "the riser top surfaces together define a support
surface" and (v) "ribbing inside the at least one riser portion in the top of the at
least one riser portion."

On May 15, 2012, the Court directed the parties to attempt to agree to the
selection of a Special Master "to conduct a *Markman* hearing and thereafter to
issue a Report and Recommendation."  (May 15, 2012 Order [Dkt. 36] at 1)  In
response to the Court's order, Plaintiffs proposed three candidates to Evolve as
potential Special Masters, including Patrick J. Flinn, the Special Master ultimately

---

[1] Plaintiffs also object to certain comments by the Special Master about the term
"riser portions" in claim 1 in the '635 Patent.  As shown below, that objection is
also without merit.

chosen by Plaintiffs and Evolve.  Mr. Flinn is an experienced patent practitioner, with thirty years' experience.  (Crisona Decl. Exh. B)

The Court issued an Order on June 8, 2012 appointing Mr. Flinn as Special Master under Federal Rule of Civil Procedure 53 "to conduct a *Markman* hearing and thereafter to issue a Report and Recommendation."  (June 8, 2012 Order [Dkt. 38] ¶ 1)  Mr. Flinn, as Special Master, was granted "the sole discretion to determine the appropriate procedures for resolution of all assigned matters and . . . the authority to take all appropriate measures to perform the assigned duties."  (*Id.* ¶ 3)  The Court's Order further provided that any objections to the Special Master's Report and Recommendation should follow the procedures outlined in Rule 53, and did *not* vary the standard of review of the Special Master's Report and Recommendation from that provided in Rule 53.

Following a telephone conference among the parties and the Special Master to establish the procedures to be followed for the claim construction hearing, the parties forwarded their claim construction briefing that had previously been filed with the Court to the Special Master.  Further pursuant to the agreed procedures, the Special Master circulated proposed constructions to the parties on June 25, 2012.  These constructions were "intended only to help guide argument at the claim construction hearing."  (Crisona Decl. Exh. C)

The Special Master presided over a claim construction hearing on June 28, 2012.[2]   At the start of the hearing, Plaintiffs provided the Special Master and Evolve's counsel with a PowerPoint presentation to accompany their arguments at the hearing.  ([Dkt. 40])  Although the presentation changed Plaintiffs' proposed construction of the critical "base opening" term from the construction contained in their claim construction briefing, Plaintiffs did *not* provide the presentation to Evolve until the start of the hearing.

The parties had previously agreed to take up the terms to be construed in the order that they had been presented in the claim construction briefing filed with the Court, but Plaintiffs, at the start of the hearing, asked to address the construction of "base opening" first.[3]   (Crisona Decl. Exh. A. 4:23-5:5)  The hearing then proceeded with Plaintiffs presenting their arguments followed by Evolve's arguments and the Special Master's questions to the parties for each of the claim terms to be construed.

---

[2]  Plaintiffs' counsel were present with the Special Master at the hearing, and Evolve's counsel participated by videoconference.
[3]  Plaintiffs correctly identified the construction of "base opening" as the "gut issue," *i.e.*, the dispositive issue, here. (Crisona Decl. Exh. A 61:14-20)  Plaintiffs undoubtedly recognize that it will be virtually impossible to continue this action in good faith if the Special Master's Report and Recommendation is adopted.  That result is a consequence of Plaintiffs' decision to begin a groundless lawsuit rather than any error on the Special Master's part.

By the end of the hearing, the parties had stipulated to the construction of "substantially hollow," and agreed that the term "ribbing inside the at least one riser portion in the top of the at least one riser portion" did not require construction, leaving three disputed claim terms to be construed.  The Special Master indicated that the terms "base surface that extends laterally" and "the riser top surfaces together define a support surface" had been adequately briefed and argued, but invited the parties to submit two-page submissions limited only to the construction of "base opening."

The purpose of the post-hearing submissions is clear from the record of the hearing.  Specifically, the Special Master invited two-page submissions from both parties concerning the meaning of "base opening" "with claim constructions that attempt to draw a distinction between a singular opening and plural openings," and also suggested that "the claim language requires there to be multiple openings, and that we need language that allows one opening to be distinguished from another opening." (Crisona Decl. Exh. A 63:7-9; 60:9-12)  Disregarding that clear instruction, Plaintiffs wrongly claimed in the two-page submission that "the parties have requested the opportunity to submit further comments concerning the construction of the claim term 'base opening' and 'the riser top surfaces together define the support surface,'" and further asked the Special Master for the first time

to construe "riser portions" based on a few paragraphs in their submission.[4] Plaintiffs also included with their two page submission a copy of U.S. Patent No. 8,152,129 (the "'129 Patent") (Crisona Decl. Exh. D), which is licensed to Evolve, and which is the subject of Evolve's patent infringement claim against DiversiTech that is also pending before the Court. *See Evolve Composites, Inc. v. DiversiTech Corp.*, 12-cv-02028-JEC (N.D. Ga.). The '129 Patent is irrelevant, and was not even brought to the Special Master's attention before Plaintiffs made their post-hearing two page submission.

The Special Master issued his Report and Recommendation on July 18, 2012. The Report, which is thorough and well-reasoned, construes the three disputed terms remaining after the claim construction hearing (and struck the improper portion of Plaintiffs' post-hearing submission). Although Evolve proffered its own constructions for those terms, which it continues to believe are the most appropriate, Evolve does not object to the Report and Recommendation, and urges the Court to accept the Report in its entirety.

---

[4] Plaintiffs' proposed construction of "riser portions" proffered to the Special Master as part of their post-hearing submission – "those portions of the equipment pad that extend from the base that a person of ordinary skill in the art would recognize as separate load-bearing portions of the riser" (Crisona Decl. Exh. D) – is unreasonably subjective. In essence, Plaintiffs essentially proposed that a "riser portion" should be construed as whatever the self-interested inventor or Plaintiffs' paid expert (as one of ordinary skill in the art) might "recognize" (*i.e.*, testify) in Court is a "riser portion." Plaintiffs do not re-urge that construction here.

## ARGUMENT

## I.   THE SPECIAL MASTER'S REPORT AND RECOMMENDATION SHOULD BE ADOPTED IN ITS ENTIRETY BY THE COURT.

### A.   The Special Master Properly Construed the Term "Base Opening."

Unlike Plaintiffs' proposed constructions, the Special Master based his construction of the term "base opening" on the irrefutable observations that:

> The claim specifically requires a "plurality" of openings, and thus cannot have the same scope as a claim that would require only one opening.  The claim language itself is the starting point for any claim construction, *Phillips*, 415 F.3d at 1314, and thus any construction of the term "opening" must allow the trier of fact to be able to distinguish between a single opening and multiple openings.  Moreover, the inventor was required to add the limitation of multiple openings to distinguish the Strieter reference (Doc. 28.4 at 27).  For this additional reason, any construction of the term must exclude a single opening from the scope of the claims.

(Report at 20)  Using this reasoning – which Plaintiffs never directly dispute – the Special Master rejected Plaintiffs' proposed construction of "base opening" from their post-hearing submission, which Plaintiffs re-urge here, "because it tries to recapture what was surrendered by the inventor to obtain the patent, and because it would essentially broaden the claim to eliminate the requirement for a plurality of openings."  (Report at 24)  Thus, the Special Master construed "base opening" to

be "a hole in the base whose lateral boundary consists of the entirety of the interior edge of the base exposed by the hole."[5]  (*Id.*)

Plaintiffs' proposed constructions of "base opening" (its most recent one and the three proposals that preceded it), suffer from the same flaw that Plaintiffs simply refuse to address, namely, that all of the constructions proffered by Plaintiffs define "base openings" with reference to their alignment with riser portion interiors, even though there is an express, *separate* claim requirement that the base openings align with the riser interiors.  This express, separate requirement that the base openings align with the riser portion interiors would be impermissibly rendered redundant if the term "base openings" is itself defined to require alignment with the riser portions.

The term "base openings" concerns openings in the base surface – *i.e.*, openings in the part of the equipment pad that supports the riser portions.  Under Plaintiffs' proposed construction of "base openings," a single, continuous opening or hole in that base surface can be transformed into a plurality of "base openings"

---

[5] Although Evolve proffered its own construction, which the Special Master found "suffers from" a "self-referential circularity" (Report at 24), Evolve submits that the Special Master's construction is a correct, acceptable one because it critically allows the trier of fact to distinguish a single opening in the base from a plurality of openings, and it does not allow Plaintiffs to recapture a scope for the claim that they surrendered during prosecution to avoid prior art.

by in effect mentally drawing imaginary boundaries in the single, continuous opening around the areas aligned with the interiors of the risers.

This flaw in Plaintiffs' proposed construction is shown clearly by a hypothetical pad diagrammed in the PowerPoint presentation Plaintiffs made at the claim construction hearing – and which the Special Master clearly rejected as having a plurality of "base openings."  That diagram (shown below and discussed in the Report at 20-24) plainly shows a single opening in the base.



Yet, Plaintiffs' construction conjures at least four "base openings" from that single opening.[6]  Thus, plaintiffs' proposed construction simply does not comport with the ordinary meaning of the claim language, or with the prosecution history for the '635 patent.

Claim 1 requires a "plurality of base openings."  The parties agree that "plurality" means "more than one," so claim 1 requires more than one base

---

[6] Plaintiffs never explain why open spaces in the base surface that align with riser portions qualify as "base openings" but any remaining open space in the base surface does not qualify as a "base opening."

opening.  The ordinary meaning of these words precludes construing them to mean that a single, continuous base opening in the base surface can be considered a plurality or more than one base opening.

Claim 1 separately requires that "*each* base opening [is] formed completely through the base surface."  (Declaration of Elizabeth G. Borland [Dkt. 49-2] Exh. A)  This language, relating to *each* opening plainly suggests that each base opening is distinct, and must be distinctly formed completely through the base surface.

Finally, claim 1 separately requires that the riser interiors of each of the plurality of riser portions must "align[] with one base opening of the plurality of base openings."  In this context, Plaintiffs' proposed construction – that a "base opening" is "an opening in the base aligned with the sidewalls of a riser portion" – is circular and makes no sense.  There would be no need for a separate requirement that the riser portions must align with the base openings if the very definition of base opening is the open space aligning with the risers.  In other words, under Plaintiffs' construction, the separate claim limitation that the base openings align with the riser is redundant.

Plaintiffs also wrongly rely on the '129 Patent, which is licensed to Evolve, as somehow informing the proper construction of "base opening" in the '635 Patent in suit.  (Objection at 14-15)  That reliance is misplaced for at least two

reasons.  *First*, the '129 Patent does not use the terms "base opening" or "riser portion" that are at issue here.  It is unreasonable for Plaintiffs to contend that different terms used by a different inventor in describing a different invention have *any* relevance to the proper construction of any term in the '635 Patent.  Indeed, the Federal Circuit, in a case on which Plaintiffs relied in their claim construction briefing, noted that a "particular term used in one patent need not have the same meaning when used in an entirely separate patent, particularly one involving different technology. In fact, there are many situations in which the interpretations will necessarily diverge."  *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1318 (Fed. Cir. 2005).  Plaintiffs here are wrongly trying to argue that *different* terms in *different* patents claiming *different* inventions by *different* inventors are somehow relevant to claim construction.

*Second,* although the '129 Patent issued on April 10, 2012 after the claim construction briefing had been completed, Plaintiffs never sought to make it part of the of the claim construction record until their improper post-claim construction hearing submission.  Plaintiffs did not seek leave to supplement the claim construction record with the Court; they did not include any mention of the '129 Patent in their thirty-five page PowerPoint presentation given to the Special Master at the claim construction hearing; and they did not mention the '129 Patent at the

hearing.  Even if the '129 Patent has some significance, and it does not, it is too late for Plaintiffs to try to raise the '129 Patent now.

As the Special Master correctly noted, the construction of "base opening" must allow the trier of fact to distinguish a single base opening from a plurality of base openings, and must not allow Plaintiffs to recapture claim scope surrendered during prosecution.  The Special Master's construction meets these criteria; Plaintiffs' does not.

## B.    The Special Master Properly Struck Portions of DiversiTech's Supplemental Response.

Although Plaintiffs proffered a new construction of "riser portions" in their post-hearing submission, they have now discarded it and returned to the stipulated construction (Objection at 23), so there is no dispute among the parties about the construction of "riser portions."  Plaintiffs nevertheless object to passages in the Special Master's report addressing "riser portions."   As shown below, those objections are unfounded.

### 1.    The Special Master did not abuse his discretion in striking portions of DiversiTech's supplemental response.

The Special Master declined to consider arguments that Plaintiffs made in their post-hearing submission about the construction of "riser portions" because the arguments were both untimely and outside the scope of the supplemental briefing

requested by the Special Master.  (Report at 1-2)  That decision was plainly a procedural one, and thus reviewed by this Court under an abuse of discretion standard.  Fed. R. Civ. P. 53(f)(5); *Gulf States Reorganization Group, Inc. v. Nucor Corp.*, 822 F. Supp.2d 1201, 1207, 1211 (N.D. Ala. 2011) (Special Master's decision on the admissibility of expert testimony is "definitely procedural," and is reviewed under an abuse of discretion standard).

Plaintiffs' Objection ignores this abuse of discretion standard of review entirely, and although they object to the Special Master's decision to disregard the extraneous parts of their post-claim construction hearing submission, Plaintiffs do not – and could not – argue that the Special Master abused his discretion in doing so.  The Special Master specifically asked for briefing directed to a single issue; Plaintiffs ignored that limitation and briefed what they wanted to; the Special Master disregarded the briefing he did not request.  He did not abuse his discretion in doing so.[7]

Even if the Court accepts, contrary to fact, that issues raised at the claim construction hearing gave rise to Plaintiffs' supposed need to reopen the stipulated construction of "riser portions," Plaintiffs were not forthright with the Special

_____

[7] Plaintiffs did not just include arguments relating to the term "riser portion" in their submission.  They also asked to substitute the construction of "riser portion" that Plaintiffs had originally proposed (and to which Evolve agreed) for a new construction that Evolve had never seen before.  (Crisona Decl. Exh. D)

Master.  Indeed, rather than openly arguing to the Special Master that discussion at the hearing raised issues concerning the construction of "riser portions" and seeking leave to address that issue in their post-hearing submission, Plaintiffs instead included it in their submission as if it had been an issue that the Special Master had asked the parties to address.  In these circumstances, Plaintiffs cannot credibly argue that the Special Master abused his discretion in declining to consider Plaintiffs' extraneous arguments.[8]

### 2.    DiversiTech's supplemental response concerning "riser portions" is mistaken in any event.

Plaintiffs' contention that they were justified in belatedly trying to reopen the construction of "riser portions" because of some supposedly mistaken belief about Evolve's non-infringement position is, to understate it, fanciful at best.  It is elementary patent law, undoubtedly known to Plaintiffs, that an infringement determination involves two consecutive steps.  First, the claims are construed, and then, the claims as construed are analyzed to determine whether they read on the accused device.  *Wavetronix v. EIS Electronic Integrated Sys.*, 573 F.3d 1343, 1354

---

[8] Plaintiffs suggest that they were somehow disadvantaged by the Special Master's decision to issue his Report and Recommendation without an anticipated follow up telephone conference because they were thus deprived of the opportunity to justify their improper post-hearing submission.  (Objection at 18)  Plaintiffs have it backwards.  They should have first sought permission to do what they did, and then proceed as they did.  Instead, they filed the submission that they – not the Special Master – wanted in the apparent hope of getting after-the-fact permission to do so.

(Fed. Cir. 2009) ("Infringement analysis involves a two-step process: the court first determines the meaning of disputed claim terms and then compares the accused device to the claims as construed"); *Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1377 (Fed. Cir. 2008) ("determination of infringement is a two-step process, wherein the court first construes the claims and then determines whether every claim limitation, or its equivalent, is found in the accused device"), *cert. denied*, 555 U.S. 1153 (2009).  So while it is true that the parties stated their infringement and non-infringement positions earlier in the case as provided by the Local Patent Rules, at this stage of the proceedings, the parties should be dealing *exclusively* with claim construction *without reference to the accused device*.[9]

Plaintiffs have been aware that Evolve contends that its pad does not have a plurality of "riser portions" since Evolve filed its response to Plaintiffs' infringement contentions on September 12, 2011.  It is correct that Evolve initially proposed a construction of "riser portions" that differed from Plaintiffs' proposed construction of that term, but by the time the parties' Joint Claim Construction Statement was filed, Evolve agreed to the construction of "riser portion" *that had*

_____

[9] Evolve and the Special Master have both scrupulously avoided any discussion of the accused Evolve pad.  Plaintiffs, despite the irrelevance of the accused device to the claim construction stage in which the parties are now engaged, inexplicably persist in bringing the accused Evolve pad before the Court.  (*See, e.g.*, Objection at 5)

*been proposed by Plaintiffs*.  In doing so, Evolve did not in any way suggest that it was changing or withdrawing its contention that the accused Evolve pad lacks a plurality of "riser portions" (nor did Plaintiffs inquire whether that was the case), and Evolve notably did *not* seek to amend or supplement its non-infringement contentions as required under LPR 4.5(b).  On these facts, Plaintiffs now claim to have made the completely unwarranted assumption that because Evolve agreed to Plaintiffs' construction of "riser portion" it was somehow withdrawing its non-infringement contention concerning the absence of a plurality of "riser portions."[10] (Objection at 21)

Plaintiffs argue that their belief that Evolve, in agreeing to Plaintiffs' construction of "riser portion," had abandoned its non-infringement contention

_____

[10] Plaintiffs also fail to explain why the stipulated construction of "riser portion" became inadequate when Plaintiffs supposedly realized that Evolve still adhered to its non-infringement contention even after agreeing to Plaintiffs' proposed construction of "riser portion."  When Plaintiffs originally proposed the construction of "riser portion," they were aware of Evolve's non-infringement contention.  Plaintiffs presumably crafted their proposed construction of "riser portion" with Evolve's non-infringement contention in mind – *i.e.*, Plaintiffs presumably considered their construction adequate even though they knew that Evolve was challenging the presence of a plurality of "riser portions" in the accused Evolve pad.  So in essence, nothing changed between when Plaintiffs first proposed their construction of "riser portion" knowing of Evolve's non-infringement contention and when Plaintiffs later supposedly realized that Evolve was adhering to that position despite its acceptance of Plaintiffs' proposed construction of "riser portion."  Plaintiffs presumably originally proposed their construction of "riser portion" in the hope either that Evolve would agree to it notwithstanding its non-infringement contention, or that the Court would adopt it.

"was a particularly reasonable one in light of" language in the '129 Patent licensed to Evolve and improperly relied on by Plaintiffs here.   (Objection at 21) Unfortunately for Plaintiffs, the chronology does not work out as Plaintiffs suggest. Evolve notified Plaintiffs that they would agree to Plaintiffs' proposed construction of "riser portion" shortly before the filing of the parties opening claim construction brief on February 24, 2012.  The '129 Patent, which issued on April 20, 2012, had not yet issued at the time Plaintiffs claim they made their "particularly reasonable" belief in reliance in part on the '129 Patent.

Assuming that Plaintiffs' claimed belief that Evolve was withdrawing its non-infringement contention is not merely an after-the-fact concoction, that belief is completely misplaced.  The factually accurate and far more sensible explanation for why Evolve agreed to Plaintiffs' proposed construction of "riser portion" after initially proposing a different construction is that even accepting Plaintiffs' flawed construction, Plaintiffs cannot show that the claim limitation – *even as construed by them* – reads on the accused Evolve pad.  In those circumstances, Evolve saw little point in wasting the parties', and especially the Court's, scarce resources construing a disputed term when the resolution of the dispute would not affect the outcome of the case.

In any event, there is no real dispute here.  The Special Master did not separately construe "riser portion," but accepted the parties' stipulated construction of the term.  (Report at 14)  Although Plaintiffs, in their post-hearing submission, did propose a different construction of "riser portion" (*see* fn.4 above), they do not re-urge that construction here, and accept the construction that they originally proposed.  (Objection at 23)  Evolve likewise agrees with that construction.  So the Special Master, Plaintiffs and Evolve *all* agree that the term "riser portions" should be construed as "portions of the equipment pad that extend from the base."

It is a fact that, in construing the disputed term "the riser top surfaces together define a support surface" *in Plaintiffs' favor*, the Special Master was careful to note that his adoption of Plaintiffs' construction in that instance "is not intended to endorse, however, the position of the plaintiffs regarding the scope of the term 'riser portion' or 'riser top surfaces.'"  (Report at 26)  In doing so, the Special Master noted that this "position is inconsistent with the requirement of 'multiple risers,' and the plaintiffs acknowledged that this position relies on the same argument on which the 'multiple openings' position, previously rejected, is based."  (*Id.*)  So in deciding a construction "the riser top surfaces together define a support surface" in the way that Plaintiffs urged, the Special Master clarified that his decision to do so should *not* be read as an endorsement of a position that

19

Plaintiffs took regarding the construction of "riser portions." The Special Master did not err in doing so, and the portion of his Report addressing this issue should not be stricken.

## CONCLUSION

For the foregoing reasons, Evolve respectfully submits that the Court should adopt the Special Master's Report and Recommendation in its entirety, and should grant such additional relief as the Court deems just and proper.

Dated:  August 17, 2012

ABELMAN, FRAYNE & SCHWAB

_____/s/ Richard L. Crisona_____
Jeffrey A. Schwab
jaschwab@lawabel.com
Richard L. Crisona
rlcrisona@lawabel.com
666 Third Avenue
New York, New York 10017
Tel.:  212-949-9022
                         and
HUNTON & WILLIAMS LLP

_____/s/ Bradley W. Grout_____
Bradley W. Grout
bgrout@hunton.com
Bank of America Plaza, Suite 4100
600 Peachtree Street, NE
Atlanta, Georgia  30308
Tel:  404-888-4283

*Attorneys for Defendant Evolve Composites, Inc.*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1C

This is to certify that Evolve Composites, Inc.'s Response to Plaintiffs' Objections to the Report and Recommendation of Special Master Regarding Claim Construction was formatted in accordance with Local Rule 5.1C in Times New Roman font, 14 point type.

  /s/ Richard L. Crisona
*An Attorney for Defendant Evolve Composites, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 17th day of August, 2012, a copy of the foregoing, Evolve Composites, Inc.'s Response to Plaintiffs' Objections to the Report and Recommendation of Special Master Regarding Claim Construction and the Declaration of Richard L. Crisona dated August 17, 2012 were filed with the Clerk of Court electronically.  Notice of this filing will be sent to all registered parties by operation of the Court's CM/ECF system.

  /s/ Richard Long
  Richard Long